# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| **Citation Corporation, et al.,** ) | Case No. 04-08130-TOM-11 |
| ) | |
| Debtors. ) | Chapter 11 |
| ─────────────────────── ) | |
| ) | |
| **JP Morgan Chase Bank, N.A.** ) | A.P. No. 05-00045 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| **AVCO Corporation,** ) | |
| ) | |
| Defendant. ) | |

## Memorandum Opinion and Order

This matter came before the Court for a hearing on May 22, 2006, on a Motion for Summary Judgment filed by AVCO Corporation, a Motion for Summary Judgment filed by JP Morgan Chase Bank, N.A., as administrative agent for the Debtors' pre-petition and post-petition lenders, AVCO's Opposition to JP Morgan Motion for Summary Judgment, and JP Morgan Chase Bank's Response to Motion for Summary Judgment filed by AVCO. Appearing at the hearing were Jesse S. Vogtle, Jr. and Christie Lyman Dowling, attorneys for AVCO Corporation, Robert H. Adams and Kimberly B. Glass, attorneys for JP Morgan Chase Bank, and Thomas Corbett, Chief Deputy Bankruptcy Administrator. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) (1994) and the district court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding arising under Title

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984, issued by the United States District Court for the Northern District of Alabama provides:

11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A), (D) and (O).[2] This Court has considered the Motions for Summary Judgment, AVCO's Opposition, JP Morgan Chase Bank's Response, the pleadings, arguments of counsel and the applicable law and concludes as follows.[3]

## I. Findings of Fact[4]

On December 11, 2002, Citation Corporation, Navasota (hereafter "Citation" or "Debtor")[5] entered into a Consignment Agreement (hereafter "the Agreement") with Lycoming Engines, a division of AVCO (hereafter "AVCO" or "Defendant"). Pursuant to the Agreement, AVCO delivered and Citation received steel for the forging of airplane crankshafts. AVCO did not file a U.C.C. financing statement or any other type of lien regarding the steel that it delivered

---

The general order of reference entered July 16, 1984, is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. § 157(b)(2) provides:
(b)(2) Core proceedings include, but are not limited to–
    (A) matters concerning the administration of the estate;
    (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death.

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. See ITT Rayonier, Inc. v. U.S., 651 F.2d 343 (5th Cir Unit B July 1981); Florida v. Charley Toppino & Sons, Inc., 514 F.2d 700, 704 (5th Cir. 1975).
These Findings of Fact come from the parties' Joint Stipulation of Undisputed Facts and the Motions for Summary Judgment, the Objection and the Response.

[5] Debtor is also referred to in the Parties' pleadings as Interstate Southwest, Ltd., which was one of the consolidated debtors in this chapter 11 case. For purposes of this opinion, the reference will be to Citation or Debtor.

2

to Citation.

Pursuant to the Agreement, AVCO supplied the steel, and Citation was not required to pay either AVCO or the raw material supplier for the steel. Citation had no role in the purchase of the steel from the material suppliers. The Agreement provided that title to the steel was to remain with AVCO at all times and that Citation bore the risk of loss once the steel was in its possession. Citation, in compliance with the Agreement's terms, never used the steel for any purpose other than crankshaft forgings for AVCO based upon a production schedule dictated by AVCO. Once the steel was forged by Citation, the forgings were returned either to AVCO or to a company that machined the forging into its near-final shape at AVCO's direction before being returned to AVCO in Pennsylvania. There is no provision in the Agreement permitting the sale of the steel to Citation or by Citation to a third party. The Agreement further required that Citation and AVCO monitor monthly reports, packing slips and bills of lading to ensure that the same steel that AVCO provided to Citation was returned to AVCO in the form of crankshaft forgings. The parties operated under the Agreement until September 18, 2004, the date on which Citation and several of its affiliates filed petitions for relief under chapter 11 of the Bankruptcy Code (hereafter "the Petition Date").

Prior to the Consignment Agreement, JP Morgan loaned money to Citation, and consistent with the loan documents, a U.C.C.-1 financing statement was filed by Plaintiff's predecessor on December 7, 1999, granting Plaintiff a lien on various accounts and inventory of Debtor to secure this loan. (Proceeding No. 1, Exhibit B)

As of the Petition Date, in compliance with the Consignment Agreement, 306,000 pounds of steel (hereafter "the Steel") were located at Citation's Navasota, Texas, forging facility. On

3

Case 05-00045-TOM    Doc 32    Filed 06/27/06    Entered 06/27/06 14:21:07    Desc Main
Document      Page 3 of 12

November 8, 2004, AVCO filed a motion for relief from the automatic stay in order to obtain possession of the Steel. AVCO, JP Morgan, the Unsecured Creditor's Committee and Citation stipulated to the Amended Consent Order, which allowed AVCO to take possession of the Steel and reserved the rights of any party to contest AVCO's ownership of the Steel or to assert a lien on the Steel or the proceeds of the Steel. AVCO and JP Morgan also agreed in the Consent Order that should an adversary proceeding commence over the Steel, the burden of proof, in connection with the complaint, "shall be the same as it would be if the Debtors had retained the Steel and [AVCO] sought turnover thereof[.]" (Proceeding No. 546) This adversary proceeding was commenced by JP Morgan on February 14, 2005, and the burden of proof is on AVCO to determine the ownership of the Steel.

### A. Contentions of Plaintiff

JP Morgan contends that the Agreement unambiguously sets forth the intent of the parties to create a consignment and asserts this position based in part on the fact that some variation of the term consign appears 68 times in the Agreement. Plaintiff also argues that because the Agreement is clear and unambiguous, no parole evidence is admissible under Texas law to determine the nature of the Agreement. Plaintiff alleges that this Agreement falls within the U.C.C., that it holds a perfected security interest and that it has a first priority lien on the Steel because of AVCO's failure to perfect a lien on this Steel. Finally, JP Morgan contends that AVCO owes the Debtor $306,000.00[6] and that all of their pre-petition liens should attach to the Steel proceeds.

---

[6] The value of the Steel taken by AVCO pursuant to the Amended Consent Order. (Proceeding No. 546)

4

### B. Contentions of Defendant

AVCO contends that the Agreement created in "plain language" a bailment rather than a consignment, and that it maintained ownership in the Steel at all times. Defendant asserts that the Agreement, notwithstanding the term "consignment," is not governed by the U.C.C., so that an Article 9 financing statement was not required to be filed. AVCO insists the Agreement is not ambiguous, but maintains that even if it were, the undisputed material facts support their position that the Agreement created a bailment. Defendant argues that if JP Morgan wants to call the Agreement a consignment, then there must be substantial evidence that the Steel was delivered for sale to Debtor, which it was not. Finally, as a bailment, AVCO contends that JP Morgan as a secured creditor is not entitled to any greater rights to the property than those possessed by Debtor.

## II. Conclusions of Law

### A. Summary Judgment

Summary judgment is only appropriate if no genuine issue as to any material fact exists and if the movant is entitled to a judgment as a matter of law. Fed. R. Bankr. P. 7056.[7] Substantive law concludes which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). In determining material facts, the court considers those facts that are outcome determinative. Id. Mere allegations of factual

---

[7] This rule incorporates into the rules governing adversary proceedings without modification Rule 56 of the Federal Rules of Civil Procedure.
Fed. R. Civ. P. 56(c) states in part: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ...[then] the moving party is entitled to summary judgment as a matter of law."

5

disputes are not enough to defeat "an otherwise properly supported motion for summary judgment." Id. at 247-48. Rather, there must be "no genuine issue of material fact." Id. at 248. The judge does not determine the truth or weigh the evidence, but identifies if there exists "a genuine issue for trial." Id. at 249. The party moving for summary judgment has the burden of demonstrating that these conditions have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The court, in determining whether the movant has met their burden of proof, must consider "the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party." Allen v. Tyson Foods, Inc. 121 F.3d 642, 646 (11th Cir. 1997).[8] "'If reasonable minds could differ on inferences arising from undisputed facts, then a court should deny summary judgment.'" Id.[9] Only when the movant satisfies its initial burden does the burden shift to the non-movant. Id. at 646. According to the Consent Order between AVCO and JP Morgan, the burden of proof, as previously agreed by these parties, is on AVCO to prove its ownership of the Steel. (Proceeding No. 546)

**B. Choice of Law**

This Court is bound by the Erie Doctrine[10] in this case and therefore will look to Alabama choice-of-law rules in its interpretation of the Agreement. Sunbelt Veterinary Supply, Inc. v. International Business Systems United States, Inc., 985 F. Supp. 1352, 1354 (M.D. Ala. 1997); see In re Gillette, 248 B.R. 845 (Bankr. M.D. Fla. 1999) (applying the choice of law rules of the

---

[8] See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598 (1986); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

[9] See Miranda v. B & B Cash Grocery Store Inc., 975 F.2d 1518 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985).

[10] Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938).

6

forum state, Florida, which directed the Bankruptcy Court to apply the state law of Wisconsin, where the property was located). The issues before this Court regard contract interpretation. "Alabama law follows the traditional conflict rules of *lex loci contractus*...[and] [u]nder *lex loci contractus* a contract is governed by the laws of the jurisdiction where the contract is made." Id. at 1355. In this case, AVCO drafted the Agreement in Pennsylvania, but it was actually accepted and entered into by Citation in Texas. (Proceeding No. 24, page 4) Thus, this Court will interpret the Agreement pursuant to the laws of Texas.

### C. Contract Interpretation

Texas courts have held that when examining a contract, the court must "ascertain the intention of the parties" by examining the four corners of the contract and all its provisions therein. Charles M. Stieff, Inc. v. City of San Antonio, 111 S.W.2d 1086, 1093 (Tex. 1938) (citing In re Galt, 120 F. 64, (7th Cir. 1903) ); Garrett, et al v. International Milling Co., 223 S.W.2d 67, 71 (Tex. Civ. App. 1949). Furthermore, the action on the contract must be between parties to it, the beneficiaries or their privies, and "'the written instrument relied upon must itself contain a contract to do the thing for the nonperformance or which the action is brought.'" Teneha Oil Co., 368 S.W.2d. 655, 657 (Tex. Civ. App. 1963) (citing Shaw v. Bush, 61 S.W.2d 526, 528 (Tex. Civ. App. 1933)). Plaintiff in this case urges that the contract is one of consignment, due to its label, and as such, is controlled by the U.C.C. One Texas court has held that "[p]arties to a transaction must also have intended that their transaction fall within the scope of Article 9 of the Code." John Bezdek Insurance Associates, Inc. v. American Indemnity Co., et al., 834 S.W.2d 401, 403 (Tex. Ct. App. 1992). AVCO maintains that although the term "consignment" was used in the Agreement, the true intent of the parties was not to create a

7

consignment under the U.C.C., but a bailment, and thus that JP Morgan has no rights to the Steel in question.

This Court must first look at Texas law to determine if this Agreement was a consignment or a bailment. Texas has adopted the U.C.C. Article 9 definition of consignment which provides in part: "a transaction, regardless of its form, in which a person delivers goods to a merchant *for the purpose of sale* ....." Tex. (Bus. & C.) Code Ann. § 9.102(a)(20) (2005) (emphasis added). Bailment under Texas law has been defined as:

> The delivery of personal property by one person to another in trust for a specific purpose, acceptance of such delivery, an express or implied contract that the trust will be carried out, and an understanding under the terms of the contract that the property will be returned to the transferor or dealt with as the transferor directs.

Soto v. Sea-Road Intern, Inc., 942 S.W.2d 67, 72 (Tex. App. 1997). The Fifth Circuit Court of Appeals and Texas state courts have been faced with interpreting whether a contract was one of sale or consignment, or one of bailment. See In re Sitkin Smelting and Refining, Inc., 639 F.2d 1213 (5th Cir.1981); Charles M. Stieff, Inc. v. City of San Antonio, 111 S.W.2d 1086 (Tex. 1938); Teneha Oil Co. v Blount, 368 S.W.2d 655 (Tex. Civ. App. 1963).

In In re Sitkin, Kodak had entered an agreement with Sitkin (the debtor) regarding the processing of its film. 639 F.2d at 1214. When Sitkin filed bankruptcy, it had 382,000 pounds of Kodak's film in its possession. Id. Some of Sitkin's secured creditors claimed rights to the film and Kodak sued for turnover. Id. The Fifth Circuit considered the facts: that there was not a sale of the film to Sitkin; Sitkin was responsible for the film while it was in its possession; that Kodak had the right to demand return of the goods; and Sitkin's special treatment of Kodak's film. Id. at 1217. The Fifth Circuit held that the agreement was not a security agreement or

8

contract for sale, but rather a bailment under Alabama law,[11] because Sitkin did not gain sufficient rights in its contract with a manufacturer "to give Sitkin's creditor a security interest in the film." 639 F.2d at 1214, 1216.

Similarly, in Stieff, the Texas Supreme Court addressed the issue of whether a contract was a bailment upon consignment or an "outright sale." Id. at 1088. In that case, Stieff entered into a contract with Walthall Music Company for the consignment of pianos from Stieff for a period of four months. Id. Walthall was liable for the pianos while they were in its possession and it had to provide inventory statements and return any unsold "consigned" pianos to Stieff. Id. After Walthall filed bankruptcy, a creditor asserted that it was entitled to retain a piano as a set-off type transaction from Walthall to that creditor for a pre-existing debt. Id.

In Stieff, the Texas Supreme Court, citing two United States Supreme Court cases, noted that there could be no sale without title passing from sender to receiver. Id. at 1090; citing Ludvigh v. American Woolen Co., 231 U.S. 522, 34 S. Ct. 161 (1913); Sturm v. Boker, 150 U.S. 312, 14 S. Ct. 99. (1893). The court looked at the provisions of the contract and found nothing to support a sale and transfer of title to Walthall, the receiver. Id. Specifically, the court noted that although the term "consignment" was found throughout the contract, the term was coupled with language that clearly created a bailment. Id. at 1090-91. For example, the term

---

[11]Alabama's definition of bailment is similar to the Texas definition:
> A bailment is defined as the delivery of personal property by one person to another for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it.

Ziva Jewelry, Inc. v. Car Wash Headquarters, Inc., 897 So.2d 1011, 1014 (Ala. 2004) (citing S/M Indus., Inc. v. Hapag-Lloyd A.G., 586 So.2d 876,881-82 (Ala. 1991).

9

consignment was linked to the consignor's right to demand return of goods shipped. Id.[12] To determine if there was a bailment, the Stieff court noted that the goods could be returned to the sender, whereas in a sale, there is an agreement to pay money. Id. at 1093; citing In re Galt, 120 F. 64 (7th Cir. 1903). The Stieff court, agreeing with In re Galt, held that the test was whether the sender has the right to compel a return of the goods sent. Id. Thus the agreement between Stieff and Walthall was held to be a bailment, because the contract was merely the transfer of possession for a limited time without transferring title. Id. at 1091. Furthermore, the court concluded that a third party creditor of the bailee (Walthall) could not claim title or interest in the bailed goods "for the consideration of a pre-existing debt of the consignee to the third party." Id. at 1095. Rather, the bailee was bound to the terms of the agreement with the bailor, Stieff. Id.

### D. Analysis

Applying the previous Texas case law to the instant case, this Court has examined the four corners of the Agreement and its provisions therein. Nowhere in the Agreement is there evidence of an intent or language in support of this being a consignment under the U.C.C. Although Plaintiff argues that the appearance of some variation of the term consign 68 times in the Agreement is supportive of its characterization as a consignment, that term alone is not "magical." This Court finds that as in the Stieff case, the term "consign" is coupled with words and phrases precisely indicating a bailment under Texas law based upon the following facts: 1)

---

[12]Another Texas court held in a similar situation that "'[t]here is no particular magic in the term 'consigned' or 'consigned account.'....The question is what was the inherent character of the transaction, which depends upon the purpose of it.'" Teneha Oil Co., 368 S.W.2d at 657 (citing In re Wells, 140 F. 752 (M.D. Pa. 1905))

10

there was a delivery by AVCO and acceptance by Citation of steel for a specific purpose and an express contract that the purpose would be carried out pursuant to the terms of the Agreement; 2) AVCO at all times maintained the right to recall the steel or direct its transfer at any time; 3) title always remained with AVCO; 4) there is no language in the Agreement anywhere that suggests, allows or authorizes the sale of the steel by Citation; 5) the risk of loss fell to Citation while the steel was in its possession.  Additionally, Citation used AVCO's steel only for AVCO purposes, and produced monthly reports reflecting this arrangement.  All of the elements of a Texas bailment existed under the facts here.  The main characteristic of a consignment (transfer for sale) did not exist under the Agreement, nor did the parties' conduct suggest there was ever a transfer for sale.  As a bailment, title and ownership always remained with AVCO.  Debtor had no ownership interest and thus Plaintiff cannot assert a lien on the Steel.  All these factors compel this Court to grant AVCO's Motion for Summary Judgment and hold that the Steel in Citation's possession on the Petition Date belonged not to Citation, but to AVCO.

### III. Conclusion

Based on these findings and conclusions, the Court finds that AVCO's Motion for Summary Judgement is due to be **GRANTED** and JP Morgan's Motion for Summary Judgment is due to be **DENIED**.

Accordingly, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** that AVCO's Motion for Summary Judgment is **GRANTED** and a Judgment is due to be entered in favor of AVCO and against the Plaintiff.

Done this the 27th day of June, 2006.

    **/s/ Tamara O. Mitchell**
    TAMARA O. MITCHELL
    United States Bankruptcy Judge

TOM:ejb

cc: Robert H. Adams, Attorney for Plaintiff
  Kimberly B. Glass, Attorney for Plaintiff
  Jesse S. Vogtle, Jr., Attorney for Defendant
  Christie Lyman, Attorney for Defendant
  Thomas Corbett, Bankruptcy Administrator

12